UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:<br><br>JOHN A. SHAUBACH and<br>SARHA SHAUBACH,<br><br>Debtors. | Case No. A12-00487-GS<br><br>Chapter 13 |
| JOHN A. SHAUBACH and<br>SARHA SHAUBACH,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. BANK NATIONAL<br>ASSOCIATION, AS TRUSTEE FOR<br>JPMORGAN ACQUISITION TRUST<br>2006-NC2, ASSET BACKED PASS-<br>THROUGH CERTIFICATES, SERIES<br>2006-NC2, JPMORGAN CHASE BANK,<br>GMAC MORTGAGE, and<br>SPECIALIZED LOAN SERVICING<br>LLC.<br><br>Defendants. | Adv. No. A12-90019-GS |

MEMORANDUM ON MOTION
FOR PARTIAL SUMMARY JUDGMENT

The debtors, John and Sarha Shaubach, have filed this action to strip down the first

deed of trust held by U.S. Bank National Association, as Trustee for JPMorgan Acquisition

Trust 2006-NC2, Asset Backed Pass-Through Certificates, Series 2006-NC2 (U.S. Bank)

against their residence, 3122 North Kalmbach Lake Drive, Wasilla, AK 99654 (the,

1

"Property"). The Shaubachs list the outstanding balance owed to U.S. Bank at $226,486. [1]

They value the Property at $169,000, leaving a deficit of $57,486. [2] The Shaubachs have filed

the instant adversary action to value the Property and limit U.S. Bank's secured claim to

$169,000.  The Shaubachs now seek partial summary judgment on their ability to modify

U.S. Bank's secured claim. [3]  U.S. Bank has opposed the motion. [4]  The court heard oral

argument on the motion on January 11, 2013.

Section § 1322(b)(2) of the Bankruptcy Code provides that a chapter 13 plan may

"modify the rights of holders of secured claims, other than a claim secured only by a security

in real property that is the debtor's principal residence...." [5] This section, therefore, precludes

debtors from bifurcating an under-secured claim against their residence into a secured claim

for the value of the residence and unsecured claim for the remainder. [6]

The debtors do not deny that the Property is their principal residence. [7]  Rather, they

argue that ¶ 6 of their *Deed of Trust* changes the equation.  Paragraph 6 reads:

> "Occupancy."   Borrower shall occupy, establish and use the
> Property as Borrower's principal residence within 60 days after

---

[1]  Pls.' *Mem. of Law in Support of Mtn for Partial Summ. J.* (Docket No. 11) at 2.

[2] *Id*.

[3]  Pls.' *Mtn for Partial Summ. J.* (Docket No. 11).

[4] Def.'s *Opp. to Pls.' Mtn for Partial Summ. J.* (Docket No. 15).

[5] 11 U.S.C. § 1322(b)(2).

[6]  *Nobleman v. American Sav. Bank,* 508 U.S. 324 (1993).

[7]  Pls.' *Mem. of Law in Support of Mtn for Partial Summ. J.* (Docket No. 11) at 1.  ("Count I seeks declaratory relief in the first instance that a purchase money deed of trust signed on April 28, 2006 and placed in first position on Debtor/Plaintiff's residence is not protected from modification under 11 U.S.C. sec. 1322(b)(2).")

> the execution of this Security Interest and shall continue to occupy the Property as Borrowers principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

The debtors argue that by limiting the residency requirement to only one year, ¶ 6 of the *Deed of Trust* automatically terminates their residency after the one year period, regardless of whether they continue to reside there or not.  In support of their argument, the debtors cite *In re Roemer*, 421 BR 23 (Bankr. D. D.C. 2009).  Like the debtors, Olga Roemer's deed of trust required that she live in her condominium for at least one year.  After the one year period, Ms. Roemer experienced financial difficulties and moved out of the condominium while marketing it for sale.[8]  She argued that since she had vacated the property, it was no longer her principal residence and she could limit the secured claim to the value of the property in her proposed plan.

The bankruptcy court noted that courts have split as to when a debtor's principal residence should be determined for purposes of § 1322(b)(2).  The Bankruptcy Appellate Panel for the Ninth Circuit has held that petition date is the applicable date.[9]  Others have held that the date the loan origination date controls.[10]  The *Roemer* court also noted that at least one court had applied a hybrid test, evaluating the circumstance as of the petition date

---

[8] *Roemer,* 421 at 25-26.

[9]  *In re Benaful,* 461 BR 581 (9th Cir. B.A.P. 2011); *see also BAC Home Loans Serv., LP v. Abdelgadir (In re Abdelgadir),* 455 BR 896, 898 (9th Cir. B.A.P. 2011) (applying the petition date to determine a chapter 11 debtor's principal residence under § 11 U.S.C. §1123(b)(5).

[10] *U.S. Dept. of Agr. v. Jackson*, 2005 WL 1563529 (M.D. Ga. July 1, 2005); *In re Smart*, 214 B.R. 63 (Bankr. D. Conn. 1997)

3

and evaluating the language of the underlying mortgage."[11]  It then examined each test, and

concluded that the same result would occur regardless of which one it applied.  Beginning

with the petition date, the debtor had moved out of the condominium and had leased the

property as of that date.  The court easily concluded that the condominium was not the

principal residence of the debtor as of the petition date.[12]

The court next considered the date of the loan origination.  As in the instant case, the

deed of trust required that Ms. Roemer live in the condominium for at least a year.  While

her primary residence when the loan was signed, the court concluded that the residency

provision clearly contemplated, and allowed for, the possibility that the property would not

be her principal residence at some point after the one year period.[13]  Inclusion of a one year

residency requirement necessarily, "limited the duration of it being a mortgage secured by

the debtor's principal residence."[14]  The hybrid test necessarily produced a similar result, as

both of its components, the petition date and the origination date resulted in the conclusion

that the condominium was not Ms. Roemers' principal residence.

While ¶ 6 of the Shaubachs' deed of trust contains a provision similar to the one

construed in *Roemer*, the material facts regarding each's primary residence are diametrically

opposite.   The debtor in *Roemer* had clearly vacated her property before filing her

---

[11] *Roemer,* 421 B.R. at 25 (citing *In re Baker,* 398 B.R. 198 (Bankr. N.D. Ohio 2008)).

[12] *Id*. at 26.

[13] *Id.* ("Its mortgage was at the outset a mortgage in the debtor's principal residence for one year and a mortgage during the remainder of the mortgage term in property that permissibly could cease to be the debtor's principal residence.")

[14] *Id.*

4

bankruptcy. The Shaubachs, however, have continuously lived at the Property from the origination of their loan and creation of the *Deed of Trust*. As such, the Shaubachs present the converse of the situation in *Roemer*; regardless whether their principal residency is measured as of the loan origination, the petition date, or some hybrid of the two, the Property is their principal residency for purposes of applying the anti-modification provision of § 1322(b)(2). Although ¶ 6 of their *Deed of Trust* contemplates the possibility that after a year the Property may not be the Shaubachs' principal residence, that is not their reality. The Shaubachs may no longer be contractually obligated to live at the Property, but they have chosen to remain there.

Because the Property is their principal residence, whenever measured, the anti-modification provision in § 1322(b)(2) applies. Therefore, the Shaubachs' *Motion for Partial Summary Judgment* must be DENIED. An order will be entered consistent with this memorandum.

DATED: March 8, 2013.

BY THE COURT

 /s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve:  C. Johansen (for plaintiff)
        R. Ullstrom (for defendant)